UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WARREN WEITZMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:09-cv-01141 (CMH/IDD) |
| ) | |
| LEAD NETWORKS DOMAINS PVT., LTD., ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff's Motion for Default Judgment against Defendant, Lead Networks Domains Pvt. Ltd. and its domain names belis.com, daffy.com, epsun.com, fivebars.com, gunit.com, helmsley.com, livs.com, mascaron, com, oncologics.com, pirreli.com, profesia.com, reabok.com, remolacha.com, satz.com, sunlet.com, vespas.com, Vitallium.com, zire.com, and redroof.org[1] ("collectively known as "Domain Names"), pursuant to FED. R. CIV. P. 55(b)(2). (Dkt. No. 16.) After Defendant failed to answer or file a responsive pleading to either the Complaint or Plaintiff's Motion for Default Judgment and after a representative for Defendant failed to appear at the hearing on April 30, 2010, the undersigned Magistrate Judge took this matter under advisement. Upon consideration of the Complaint, Plaintiff's Motion for Default Judgment, supplemental briefings, and the supporting affidavits, the undersigned Magistrate Judge makes the following findings and recommends that default judgment be entered against Defendant.

---

[1] Although the domain names validas.com, condensate.com, sonystyles.com, and viao.com were originally included in the Complaint, Plaintiff filed Motions to Dismiss and Notices of Voluntary Dismissals for the aforementioned domain names. (Dkt. Nos. 9, 10, 27, and 28 respectively). The Honorable Claude M. Hilton dismissed the domain names validas.com and condensate.com, with prejudice on May 03, 2010 (Dkt. No. 20), and sonystyles.com and viao.com, without prejudice on May 17, 2010. (Dkt. No. 29.)

## I. INTRODUCTION

Mr. Warren Weitzman ("Plaintiff") filed a Complaint on October 09, 2009, seeking declaratory judgment and relief under the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA"), based on Defendant's tortious interference with a contractual relationship, conversion, and alleged bad-faith use of the following domain names belis.com, condensate.com, daffy.com, epsun.com, fivebars.com, gunit.com, helmsley.com, livs.com, mascaron, com, oncologics.com, pirreli.com, profesia.com, reabok.com, remolacha.com, satz.com, sonystyles.com, sunlet.com, validas.com, vespas.com, vitallium.com, viao.com, zire.com, and redroof.org. (Compl. Dkt. No. 1.) The ACPA grants trademark owners a remedy against "cybersquatting". Cybersquatting is when a trademark owner claims that another party registered or used their trademark as a domain name with the bad faith intent of profiting from the sale or use of the domain name.[2]

Plaintiff has moved for default judgment in accordance with the ACPA, but does not seek the additional damages requested in its Complaint.[3] (Pl.'s Mem. Supp. Default J. at 3.) Therefore, the Court need not address the question of whether Plaintiff's claim based on

---

[2] *See Corsair Memory, Inc. v. Corsair7.com*, 2008 U.S. Dist. LEXIS 110067 at *20 (N.D. Cal. Nov. 3, 2008) (quoting 15 U.S.C. § 1125(d)(1)(B)(i)(VI) to define cybersquatting as: "Offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct."); *see also Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 295 (2d Cir. 2002) (explaining Congress's enactment of the ACPA as a supplement to the federal trademark statute in order to combat bad-faith registration or use of domain names).

[3] Although the Complaint seeks declaratory judgment and states causes of action for both tortious interference with a contractual relationship (Count IV) and conversion (Count V), the Motion for Default Judgment only seeks judgment against Defendant under the ACPA. Dkt. No. 17, Pl.'s Mem. Supp. Default J. at 3 ("The Court will note that, pursuant to the remedies available for an *in rem* action brought pursuant to the ACPA, no damages are sought. The Plaintiff, upon receipt of judgment in this matter, requests that the remaining claims be dismissed, without prejudice.")

declaratory judgment (Count I), tortious interference with contract (Court IV), and conversion (Count V) merit relief, or whether the Complaint sufficiently states a claim for those causes of action. Consequently, Plaintiff requests this Court to transfer the registrar of the Domain Names to Plaintiff or to a registrar of Plaintiff's choosing to be registered in Plaintiff's name. (Pl.'s Mem. Supp. Default J. at 4.)

### A. Jurisdiction and Venue

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1337, and 1338 because this case arises under the federal Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq*.

This Court also has *in rem* jurisdiction over the defaulting Defendant's domain name in accordance with 15 U.S.C. § 1125(d)(2)(A). In that regard, Plaintiff is unable to obtain personal jurisdiction over Defendant or any other party who would have been a defendant in a civil action under the ACPA because the Defendant is located in India and does not have the requisite minimum contacts with the United States to warrant appropriate personal jurisdiction. In such a case, 15 U.S.C. § 1125(d)(2)(A) allows a trademark owner to "[f]ile an *in rem* civil action against a domain name in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located if:

(i) the domain name violates any right of the owner of a mark registered in the Patent and Trademark office, or protected under subsection (a) or (c)[4]; and

(ii) the court finds that the owner –
    (I) is not able to obtain in personam jurisdiction over a person who would have been a defendant in a civil action under paragraph (1) [of the ACPA]; or

    (II) through due diligence was not able to find a person who would have been a defendant in a civil action under paragraph (1) by
        (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and

        (bb) publishing notice of the action as the court may direct promptly after filing the action." 15 U.S.C. § 1125(d)(2)(A).

This Court finds that Plaintiff has complied with all measures of the ACPA by providing direct notice to the registrant of the Domain Name. Specifically, Plaintiff forwarded a copy of the Complaint along with his notice of intent to proceed under the ACPA to Defendant, at the postal address and e-mail address listed on Defendant's website, leadnetworks.com. (Compl. ¶ 8.) The Plaintiff also published notice of this action as directed by this Court. (Dkt. No. 7; Dkt. No. 11; Dkt. No. 17, Pl.'s Mem. Supp. Default J. at 2.) Since the Plaintiff has abided by 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa) – (bb) and is still unable to obtain personal jurisdiction over the Defendant, this *in rem* civil action is properly before this Court.

---

[4] 15 U.S.C. § 1125(a)(A) provides that, "Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name... or any combination thereof... is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another... shall be held liable in a civil action."

Although Plaintiff's Marks are not registered with the Patent and Trademark office, he is protected under subsection (a) because his Domain Names are connected with goods or services in the stream of commerce and Defendant has usurped these Domain Names to not only divert the profits to itself but to also cause confusion and deceive consumers.

Venue is appropriate in this District under 28 U.S.C. §§ 1391(b), (c), and (d), as well as 15 U.S.C. § 1125(d)(2)(C)(i), which states, "a domain name shall be deemed to have its situs in the judicial district in which—the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." (Compl. ¶ 6.) VeriSign is the registry for all domain names in the ".com" top-level domain, and VeriSign's principal place of business is located at 21355 Ridgetop Circle –Lakeside III, Dulles, Virginia 20166. (Compl. ¶ 6.) Consequently, venue is proper in this District.

### B. Service of Process

Plaintiff was unable to locate and personally serve the defaulting Defendant. As such, service of process under the *in rem* provisions of the ACPA is effective by notifying the registrant of the contested domain name by postal and email address and publishing notice of the action as the Court may direct. 15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa) – (bb). After commencement of this action, Plaintiff's counsel sent notice of its intent to proceed against Defendant to the postal and e-mail address provided by the Defendant on its website at leadnetworks.com. (Compl. ¶ 8.)

In addition to providing both email and hard copy notice, Plaintiff's counsel elicited the Court's approval to publish notice by publication under § 1125(d)(2)(A)(ii)(II)(bb). (Dkt. No. 2.) On February 04, 2010, the Court granted Plaintiffs' Motion for an Order to Publish Notice of the Action. (Dkt. No. 7.) Afterward, Plaintiff published notice in *The Washington Post* on February 25, 2010. (Dkt. No. 11.) Hence, Plaintiff has satisfactorily served process of this action on the Defendant pursuant to the ACPA.

### C. Grounds for Default

The Complaint was filed on October 09, 2009. Defendant has failed to appear, answer, or file any responsive pleading in this matter. On April 20, 2010, Plaintiff filed a Request for Entry of Default with respect to certain listed Domain Names. (Dkt. No. 12.) The Clerk entered default on April 21, 2010. (Dkt. No. 15.) On April 23, 2010, Plaintiff filed a Motion for Default Judgment and a hearing was conducted on April 30, 2010. (Dkt. No. 16.) No representative for the defaulting Defendant appeared at the April 30, 2010 hearing, and the Court took the Motion under advisement to issue this Report and Recommendation. At the conclusion of the hearing, the undersigned Magistrate Judge continued this matter until May 14, 2010, in order to give Plaintiff sufficient time to file supplemental briefing to his Motion for Default Judgment. After receiving Plaintiff's supplemental briefing, the Court removed the May 14, 2010 hearing from the docket.

## II. FINDINGS OF FACT

Upon a full review of the pleadings[5], the undersigned Magistrate Judge finds that Plaintiff has established the following facts.

Plaintiff is a national person with his primary residence in Bethesda, Maryland. (Compl. ¶ 1.) The Defendant is an Indian corporation and serves as a registrar with the authority to maintain domain names for third parties. (Compl. ¶ 10.) Defendant's primary place of business

---

[5] The pleadings include the Complaint (Dkt. No. 1), Plaintiff's Motion for Default Judgment (Dkt. No. 16), Plaintiff's Memorandum in Support of Motion for Default Judgment (Dkt. No. 17), and the declarations and affidavits in support thereof, as well as the first and second Supplemental Memoranda in Support of Motion for Default Judgment (Dkt. Nos. 21, 30.)

is at B-304 Florida, Y-11, Shastri Nagar, Lokhandwala Complex, Andheri (West), Mumbai, MAHARASHTRA, India 40053. (Compl. ¶ 2.)

### A. Plaintiff's Mark

Plaintiff is in the business of domain monetizing and establishes and registers domain names for the purpose of turning Internet traffic into monetary gain through the use of "click through traffic". (Compl. ¶ 9.) Domain monetizing is a process in which advertisements are placed on "parked" domain names in order to generate revenue for both the party that owns the domain and the party that places the advertisement. *HCB, LLC v. Oversee.net*, 2009 U.S. Dist. LEXIS 84447, at *2-3 (D.V.I. Sept. 16, 2009). "A "parked" domain name is one that is owned, but that does not have content on it. When an internet user visits the "parked" domain name, he or she is shown advertisements provided by search engines and other providers of pay-per-click advertising. *Id.* at *2. These advertisers pay the domain monetizing specialists, who in turn pay the owner of the "parked" domain name." *Id.*

Since 1994, through licensing agreements, Plaintiff has entered into contracts with registries, Verisign, Inc. and Public Interest Registry, Inc., to acquire ownership of over 12,000 domain names. (Compl. ¶¶ 19, 28.) Plaintiff is allegedly the rightful owner of the disputed Domain Names. (Compl. ¶ 11; Dkt. No. 21, Pl.'s Suppl. Mem. Supp. Default J. Exhs. 1-20.) As a result of Plaintiff's registration and use of the Domain Names, Plaintiff now owns common law rights to the trademarks and is using them to generate income by providing online advertising and marketing services for others. (Pl.'s Mem. Supp. Default J. at 3; Dkt. No. 30, Pl.'s Suppl. Brief, Exh. 1, Weitzman Decl. ¶ 1.) In addition, Plaintiff's pervasive use of the Domain Names transposed the trademarks into valuable assets to Plaintiff, representing Plaintiff's substantial

goodwill and solid reputation with consumers. (Compl. ¶ 12.) Therefore, through Plaintiff's longstanding, continuous, and exclusive use of the Domain Names, Plaintiff owns valid and enforceable rights to each of the registered Domain Names.

### B. Defendant's Unlawful Control over Plaintiff's Domain Names

After Plaintiff registered the Domain Names under his own name, Defendant, Lead Networks, unlawfully took control over each of the disputed Domain Names. (Compl. ¶ 13.) Defendant took control of the subject Domain Names by using its position as a valid old registrar for Plaintiff's domains and by re-titling the subject domains as if they were owned by Defendant. (Pl.'s Suppl. Mem. Supp. Default J. at 3; Weitzman Affidavit ¶ 2.) Defendant then inserted itself as controller of the domains and locked out Plaintiff from being able to access his Domain Names. (Weitzman Aff. ¶ 5; Dkt. No. 21 Exh. 20.) Since registering the infringing Domain Names, the Defendant has redirected income from the traffic to the Domain Names, to itself. (Compl. ¶¶ 14, 15.)

Registration of the Domain Names with knowledge that the names were owned by the Plaintiff and further preventing Plaintiff from further access to the Domain Names evidences a bad-faith intent to profit from the value and positive associations connected with Plaintiff's Domain Names. (Weitzman Aff. ¶¶ 2-6.) By redirecting income from the traffic to the Domain Names, the defaulting Defendant has harmed and will continue to harm the goodwill enjoyed by Plaintiff, by creating a false association as to who is the true owner of the Domain Names. (Compl. ¶¶ 10-17.) Moreover, Defendant's improper monetizing of the Domain Names has generated a lower income stream from the Domain Names to the Plaintiff, and therefore has negatively affected Plaintiff's business. (Weitzman Aff. ¶¶ 4-6.) For the aforementioned injury,

Plaintiff seeks sole final and indisputable ownership of the Domain Names. (Pl.'s Mem. Supp. Default J. at 3-4.)

### III. EVALUATION OF PLAINTIFF'S COMPLAINT

Plaintiff alleges that Defendant persists on controlling the Domain Names despite Plaintiff's rightful ownership over the Domain Names. Defendant's prolonged exploitation of the Domain Names is harmful to Plaintiff's goodwill. Defendant's usage and registration is also in violation of 15 U.S.C. § 1125(d) because of Defendant's bad-faith intent to recoup profits that lawfully belong to Plaintiff. More specifically, as a registrar, Defendant abused its position and should not retain the duly owned Domain Names owned by other parties for its own financial purpose. (Pl.'s Suppl. Mem. Default J. at 3.) In addition, Defendant improperly retained the income from Plaintiff's Domain Names. (Pl.'s Suppl. Mem. Default J. at 3.) At this point, Plaintiff forgoes his monetary requests in the Complaint and moves this Court to enter an Order of Default Judgment against Defendant and to authorize the transfer of ownership of the Domain Names to Plaintiff. (Pls.' Mot. Default J at 3.)

A defendant in default admits the factual allegations in the complaint. FED. R. CIV. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts alleged state a claim.") Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge analyzes Plaintiff's claims in accordance with FED. R. CIV. P. 12(b)(6) to ensure that the Complaint properly states a claim.

In that regard, the Complaint contends that the Defendant's actions of assuming the role of registrant over Plaintiff's Domain Names constituted cyberpiracy, in violation of 15 U.S.C. § 1125(d). (Compl. ¶ 33.) The statute sets forth the requisite elements of cybersquatting as follows:

> (d) Cyberpiracy prevention
>
> (1)(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person
>
> > (i) has a bad intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> >
> > (ii) registers, traffics in, or uses a domain name that –
> >
> > > (I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
> > >
> > > (II) in the case of a mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or
> > >
> > > (III) is a trademark, word, or name protected by reason of section 706 of Title 18 or section 220506 of Title 36.
> > > 15 U.S.C. § 1125(d).

Plaintiff pleads in his Complaint that he holds valid trademark rights to the disputed Domain Names by virtue of his use in providing online advertising and marketing services for others. (Compl. ¶¶ 9-17; Pl.'s Suppl. Brief at 2.) Plaintiff evidences these rights by attaching to the Supplemental Memorandum in Support of Motion for Default Judgment, his valid registrations and payment for a majority of the disputed Domain Names. (Dkt. No. 21, Exhs. 1-20.)

In addition to widespread use of his Domain Names, Plaintiff also has made considerable investments in maintaining and monetizing the Domain Names, thus linking his reputation and goodwill to the appropriate Domain Names. Each Domain Name is presented to the public as a small business in order to encourage internet users to return to the same site when searching for similar information. (Weitzman Decl. ¶¶ 3-4.) Statistics for the disputed Domain Names indicate that during Plaintiff's ownership, numerous users made repeat visits, presumably because the user found the Domain Name useful in locating the information for which the user sought. (Weitzman Decl. ¶ 5.) Therefore, Plaintiff profited from his efforts to create a positive association between his Domain Names and the advertising, content, and information located on each of these Domain Names. (Pl.'s Suppl. Brief at 3.)

Although Plaintiff has sufficiently shown that he owns the rights to these Domain Names, the real question now turns on whether domain monetizing and common law ownership of a domain name fall under the purview and protection of the ACPA. As Plaintiff notes in his brief, the Domain Names that he previously used are highly suggestive of the actual advertising placed on the site, but are not indicative of the actual goods and services provided. (Pl.'s Suppl. Brief at 3.) For example, the word "belis" in "belis.com" helps differentiate Plaintiff's advertising from others, but does not in fact identify a particular good or service with the name "belis". (Pl.'s Suppl. Brief at 3.) So, the real question is, does a domain name that is not registered as a trademark, but is used to provide internet users certain services, constitute a "mark" under the ACPA?[6]

In *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir.

---

[6] 15 U.S.C. § 1125(d)(2)(A) of the ACPA only provides protection for owners of "marks".

2001), the People for the Ethical Treatment of Animals' (PETA) sued the Defendant, Doughney, after the Defendant registered the domain name "peta.org", and created a website called "People Eating Tasty Animals." The United States Court of Appeals for the Fourth Circuit opined that the U.S. District Court for the Eastern District of Virginia properly granted Plaintiff's motion for summary judgment. In finding such, the Court of Appeals for the Fourth Circuit averred that the District Court properly applied the ACPA, and that a website need not actually sell goods or services for the use of a mark in that site's domain name to constitute a use "in connection with goods or services". *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001). Rather, the Defendant need only have prevented users from obtaining or using Plaintiff's goods or services, or need only have connected the website to other's goods or services. *Id.*

When the Court in this District initially addressed ACPA analysis, the Court utilized the various factors included under the ACPA to determine whether or not the Defendant had rightful ownership over the domain name. *People for the Ethical Treatment of Animals, Inc. v. Doughney*, 113 F. Supp. 2d 915, 920-21 (E.D. Va. 2000). In that regard, the Honorable Claude M. Hilton, United States District Judge, Eastern District of Virginia, found that Defendant possessed no intellectual property rights in "peta.org" when he registered the domain name because the domain name was not related in any way to Defendant's legal name or any name that was otherwise used to identify the Defendant. *People for the Ethical Treatment of Animals, Inc.*, 113 F. Supp. 2d at 920. Moreover, the Court stated that the domain name infringed upon Plaintiff's lawful use because Defendant had not engaged in prior use of the domain name in connection with the "bona fide offering of any goods or services", and had, since registration,

12

used the PETA Mark in a commercial manner. *Id.* Lastly, the Court found that Defendant clearly intended to confuse, mislead and divert internet users into accessing his web site. *Id.*

Plaintiff argues that because his advertising services are distinctive and pertain specifically to users clicking on the disputed Domain Names, the Domain Names should fall under the protection of a trademark under the ACPA. The undersigned Magistrate Judge concurs. Similar to the situation in *People for the Ethical Treatment of Animals*, the Defendant here has taken unlawful possession of domain names that prevent users from obtaining or using Plaintiff's services. Defendant redirected the proceeds from Plaintiff's prior work to itself by illegally preventing Plaintiff from accessing his Domain Names. Further, Defendant is not efficiently managing the advertising services of the Domain Names and thus is prohibiting users from fully benefiting and receiving the services that they seek. Thus, legal precedent dictates that Plaintiff's Domain Names should be afforded the protection of the ACPA.

Considering that Plaintiff has properly pled that he owns the rights in the Domain Names, and that these rights are protected under 15 U.S.C. § 1125 (c)(2)(A), this Court now evaluates the Plaintiff's claim under the standard for default judgment. In that regard, Plaintiff argues that a judgment should be granted in his favor because Defendant failed to respond to the Complaint. A Plaintiff may merit default judgment when a party has "failed to plead or otherwise defend" their case. Fed. R. Civ. P. 55(a); *see also Music City Music v. Alfa Foods, Ltd.* 616 F. Supp. 1001 (E.D. Va. 1985). The Federal Rules of Civil Procedure require that a defendant serve an answer within 20 days of being served with a summons and a complaint. Fed. R. Civ. P. 12(a)(1)(A). The Defendant has not complied with this rule. A default judgment is then appropriate under these circumstances. *See Park Corp. v. Lexington, Ins. Co.*, 812 F.2d 894 (4th Cir. 1987)

(upholding default judgment when defendant lost summons and complaint and did not answer within the prescribed period). "Once a party defaults, the issue of whether to grant or deny a motion for entry of default judgment is a matter largely within the discretion of the trial court." *Broglie v. Mackay-Smith*, 75 F.R.D. 739, 741 (E.D. Va. 1977) (citing *Kocenko v. Buskirk*, 56 F.R.D. 14 (E.D. Pa. 1972)).

In addition to Defendant's silence in this proceeding, the Plaintiff also argues that the Defendant continues to usurp Plaintiff's Domain Names with the bad faith intent to profit from Plaintiff's ownership. Bad faith intent described under the ACPA shall not be found in any case in which the court determines that the alleged infringing person believed and had reasonable grounds to believe that the use of the domain name was a fair use or otherwise lawful.[7]

---

[7] (B) (i) In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to--
    (I) the trademark or other intellectual property rights of the person, if any, in the domain name;
    (II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;
    (III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;
    (IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;
    (V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;
    (VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;
    (VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;
    (VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and
    (IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c). 15 U.S.C. § 1125(d)(1)(B)(i).

Preceding analysis supports the conclusion that Defendant did not have reasonable grounds to register and use Plaintiff's Domain Names for the purpose of acquiring the proceeds from the traffic to the Domain Names. Specifically, it is impossible to conclude that Defendant believed that its use of the Domain Name was lawful, especially when it had to seize Plaintiff's ownership by covertly locking Plaintiff's account. (Dkt. No. 21, Exh. 20.) Furthermore, case precedent indicates that use of a website of another to prevent or hinder the internet user from finding the true owner's website is improper. *See People for the Ethical Treatment of Animals*, 263 F.3d at 365 (finding impropriety when an individual tried to appropriate the mark of another by redirecting the internet public and interfering with the mark owner's distribution of its services).

Thus, the totality of circumstances set forth in Plaintiff's Complaint, first Supplemental Memorandum in Support of Motion for Default Judgment, and second Supplemental Brief, support a finding of "bad-faith" intent by Defendant in continuing to fraudulently use Plaintiff's Domain Names for its financial benefit. Defendant has no apparent ownership interest or any trademark or intellectual property rights in the disputed Domain Names. Rather, as discussed above, Plaintiff clearly owns the registration to the aforementioned Domain Names. Consequently, Defendant is in actuality reaping the benefits of internet traffic to these Domain Names by illegitimately re-titling them to itself. The continued unauthorized registration of the Domain Names to Defendant has caused and will continue to cause financial injury to Plaintiff and the goodwill associated with its business.

Given that a majority of the statutory factors under 15 U.S.C. § 1125(d)(1)(B)(i) support a finding of bad faith intent, the undersigned Magistrate Judge concludes that Defendant's continuing actions demonstrate bad faith intent as defined by the ACPA. Because the facts and

allegations set forth in the Complaint sufficiently state a claim for cyberpiracy and bad faith registration under 15 U.S.C. § 1125(d), the undersigned Magistrate Judge recommends that default judgment be entered in favor of Plaintiff with respect to Defendant, Lead Networks Domain Pvt. Ltd.

## IV. **REQUESTED RELIEF**

The only remedies available for a mark owner who must proceed *in rem* are forfeiture, cancellation, or transfer of the infringing domain name to the mark owner. 15 U.S.C. § 1125(d)(2)(D)(i); *see also Alitalia-Linee Aeree Italiane S.p.A. v. casinoalitalia.com*, 128 F. Supp. 2d 340, 345 (E.D.V.A 2001). Thus, under 15 U.S.C. § 1125(d)(1)(C), Plaintiff, Warren Weitzman, may obtain a forfeiture, cancellation, or transfer of the following domain names: belis.com, daffy.com, epsun.com, fivebars.com, gunit.com, helmsley.com, livs.com, mascaron, com, oncologics.com, pirreli.com, profesia.com, reabok.com, remolacha.com, satz.com, sunlet.com, vespas.com, Vitallium.com, zire.com, and redroof.org. Plaintiff asks that this Court enter an Order requiring VeriSign Global Registry Services, the registry for the Domain Names, to transfer the registrar of the Domain Names to Plaintiff himself or to a registrar of Plaintiff's choosing to thereafter be registered in Plaintiff's name. (Pl.'s Mem. Supp. Default J. at 3)

## V. **RECOMMENDATION**

The undersigned Magistrate Judge recommends the entry of default judgment in favor of Mr. Warren Weitzman against Defendant, Lead Networks Domains Pvt. Ltd, for violations of the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The undersigned Magistrate Judge further recommends that an Order be entered directing VeriSign, as the registrar, to transfer the registrar of the following Domain Names to a registrar of Plaintiff's choosing to thereafter be

16

registered in Plaintiff's name, pursuant to 15 U.S.C. § 1125(d)(1)(C): belis.com, daffy.com, epsun.com, fivebars.com, gunit.com, helmsley.com, livs.com, mascaron, com, oncologics.com, pirreli.com, profesia.com, reabok.com, remolacha.com, satz.com, sunlet.com, vespas.com, Vitallium.com, zire.com, and redroof.org.

## VI. **NOTICE**

**By mailing copies of this report and recommendation, the parties are notified as follows. Objections to this report and recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this report and recommendation. A failure to file timely objections to this report and recommendation waives appellate review of the substance of the report and recommendation and waives appellate review of a judgment based on this report and recommendation.**

The Clerk is directed to send a copy of this Report and Recommendation to all counsel of record and defendant at the following address and e-mail:

> Lead Networks Domains Pvt. Ltd.
> B-304 Florida, Y-11, Shastri Nagar
> Lokhandwala Complex, Andheri (West)
> Mumbai, MAHARASHTRA,
> India 400053
> cover@leadnetworks.in

/s/
Ivan D. Davis
United States Magistrate Judge

September 24, 2010
Alexandria, Virginia